IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| Kenneth R. Houghtling, | ) | Case No. 4:19-cv-00368-DCC |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Allstate Insurance Company, | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiff's and Defendant's cross-motions for summary judgment. ECF Nos. 13, 15. Both motions have been fully briefed. ECF Nos. 16, 17.

## BACKGROUND

Plaintiff brings this action seeking a declaration that he is entitled to stack underinsured motorist ("UIM") coverage under a policy with Defendant on three at-home vehicles. ECF No. 15 at 1. The parties have stipulated to the following facts:

> 1. On November 27, 2017, Plaintiff was struck by a vehicle driven by Vicatria Thomas a.k.a. Victoria Thomas . . . in Florence County, South Carolina.
>
> 2. Plaintiff is a named insured under Policy No. 930493351 (hereinafter "Policy") issued by [Defendant] which provided bodily injury underinsured motorist coverage in the amount of $100,000 for three vehicles listed as insured autos under the terms of the policy: a 2003 Chevy Silverado, 2016 Jeep Patriot and 2014 Honda Civic . . . .

3. At the time of the accident, Plaintiff was a pedestrian and none of the vehicles listed on the Policy were involved in the accident.

4. Plaintiff has filed suit against Thomas, but has not been awarded a judgment against Thomas that is binding upon [Defendant], the UIM carrier.

5. Plaintiff received the $25,000 bodily injury liability limits from Vicatria Thomas's automobile liability carrier in exchange for a covenant not to execute.

6. [Defendant] has paid $100,000, an amount equal to the UIM limits on one of the vehicles listed on the Policy, in exchange for a release of Plaintiff's claim for UIM coverage on one vehicle. The release specifically reserved Plaintiff's right to pursue UIM claims for the other two automobiles insured under [the Policy] . . . .

ECF No. 11 at 1.

## APPLICABLE LAW

*Summary Judgment Standard*

Rule 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

3

> adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

***South Carolina Law***

A federal court exercising diversity jurisdiction applies state substantive law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citations omitted). It is undisputed that the substantive law of the State of South Carolina applies to this matter. Under the South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Financial Ins. Co.*, 514 S.E.2d 327 (S.C. 1999). The court must give policy language its plain, ordinary, and popular meaning. *Id*. When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Id*.; see *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 162–163, 588 S.E.2d 112, 115 (S.C. 2003). This court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id*. An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White*, 390 S.E.2d 471 (S.C. Ct. App.1990).

A policy clause extending coverage must be liberally construed in favor of coverage. *Torrington Co. v. Aetna Cas. and Sur. Co.*, 216 S.E.2d 547 (S.C. 1975). Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing an exclusion's applicability. *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005); *Boggs v. Aetna Cas. and Sur. Co.*, 252

4

S.E.2d 565 (S.C. 1979). However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language or to extend or defeat coverage that was never intended by the parties. *Diamond State Ins. Co. v. Homestead Indus. Inc.*, 456 S.E.2d 912, 915 (S.C. 1995).

When a provision is ambiguous, the intent of the parties controls. *See Holcombe v. Orkin Exterminating Co., Inc.*, 317 S.E.2d 458 (S.C. Ct. App. 1984). Although the interpretation of a contract is generally a matter of law, the intent of the parties becomes a question of fact for the jury when the contract is ambiguous. *Kumpf v. United Tel. Co.*, 429 S.E.2d 869 (S.C. Ct. App. 1993). Accordingly, summary judgment is not appropriate where, due to an ambiguity, the intent of the parties is at issue.

## **DISCUSSION**

The UIM coverage under the Policy is governed by Part 3, Section II of the Policy, which provides, in part,

> **Insuring Agreements**
> **We** will pay those damages that an insured person is legally entitled to recover from the owner or operator of an underinsured auto because of:
>
> 1. **bodily injury** sustained by an insured person; and
>
> 2. **property damage**.
>
> The **bodily injury** or **property damage** must be caused by the accident and arise out of the ownership, maintenance or use of an underinsured auto.
>
> **We** will pay under this coverage only after the limits of liability under any applicable liability bonds or policies, or any applicable uninsured motorists coverage have been exhausted by payment of judgments or settlements.

5

\*\*\*

**Limits of Liability**

The limits shown on the Policy Declarations are the maximum **we** will pay for any single accident involving an insured auto. The limit stated for each person for **bodily injury** is **our** total limit of liability for all damages because of **bodily injury** sustained by any one person in a single accident involving an insured auto including all damages sustained by anyone else as a result of that **bodily injury**. Subject to the limit for each person, the limit stated for each accident is **our** total limit of liability for all damages for **bodily injury** sustained by two or more persons in any single accident involving an insured auto . . . . This is the most **we** will pay regardless of the number of:

1. insured persons;

2. claims made;

3. vehicles or premiums shown on the Policy Declarations; or

4. vehicles involved in the accident.

The Underinsured Motorists Insurance limits apply to each insured **motor vehicle** as shown on the Policy Declarations. The insuring of more than one person or auto under this policy will not increase **our** liability limits beyond the amount shown for any one auto, even though a separate premium is charged for each auto. The limits also will not be increased if **you** have other auto insurance policies that apply.

In addition to this limit, **we** will make an additional amount available to **you** or any **resident** relative if such person sustains **bodily injury** or **property damage** in an accident involving **your** insured auto. The additional amount is equal to the sum of that part of the limit on each additional insured auto shown on the Policy Declarations that does not exceed the limit provided for the insured auto involved in the accident.

> This additional amount is the most **we** will pay over the stated limit of liability regardless of the number of:
>
> 1. insured persons;
>
> 2. claims made; or
>
> 3. vehicles involved in the accident.
>
> However, no one will be entitled to receive duplicate benefits for the same elements of loss.

ECF No. 15-1 at 33–35 (emphasis in original).

In South Carolina "[s]tacking is defined as the insured's recovery of damages under more than one policy until all of his damages are satisfied or the limits of all available policies are met." *Giles v. Whitaker*, 376 S.E.2d 278, 279 (S.C. 1989). Under South Carolina Code Section 38-77-160,

> Automobile insurance carriers . . . shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage. Benefits paid pursuant to this section are not subject to subrogation and assignment.

7

At issue in this case is whether Plaintiff can stack the UIM coverage for his at-home vehicles for bodily injury sustained while he was a pedestrian. South Carolina courts "have consistently held that to ascertain whether an insured may stack under section 38-77-160 the court must determine whether the insured qualifies as a Class I or Class II insured." *Cont'l Ins. Co. v. Shives*, 492 S.E.2d 808, 810 (S.C. Ct. App. 1997). Here, Plaintiff is a Class II insured as it is undisputed that he was a pedestrian at the time of the accident. *See Ohio Cas. Ins. Co. v. Hill*, 473 S.E.2d 843, 845 (S.C. Ct. App. 1996) ("A Class I insured is an insured or named insured who has a vehicle involved in the accident . . . . An insured is a Class II insured if none of his vehicles are involved in the accident."(internal citations omitted)). Accordingly, Plaintiff is not entitled to stack coverage under South Carolina Code Section 37-77-160. *See Shives*, 492 S.E.2d at 810 ("Although Class I insureds may stack coverage, Class II insured may not.").

Further, the Supreme Court of South Carolina has found that policy provisions limiting the ability to stack UIM coverage can be valid. *See, e.g., Burgess v. Nationwide Mut. Ins. Co.*, 644 S.E.2d 40 (S.C. 2007) (holding that "public policy is not offended by an automobile insurance policy provision which limits the portability of basic 'at-home' UIM coverage when the insured has a vehicle involved in the accident"); *Shives*, 492 S.E.2d at 811 ("Our courts will invalidate a policy provision that purports to limit stacking of statutorily required coverage . . . . If, however, the language of the policy that limits stacking 'merely tracks the statutory restriction,' then the restriction is valid." (quoting *Brown v. Cont'l Ins. Co.*, 434 S.E.2d 270, 272 (S.C. 1993)).

8

Here, the language of the Policy prohibits Plaintiff from stacking UIM coverage for this accident.[1] That prohibition mirrors the limitation on stacking adopted by South Carolina Code Section 38-77-160. Accordingly, under both the Policy and the relevant state statute, Plaintiff is not entitled to stack UIM coverage for this accident, and judgment in favor of Defendant is appropriate.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [13] is **GRANTED**, Plaintiff's Motion for Summary Judgment [15] is **DENIED**, and this action is dismissed.

IT IS SO ORDERED.

December 18, 2019　　　　　　　　　　　　　　　　s/ Donald C. Coggins, Jr.
Spartanburg, South Carolina　　　　　　　　　　　United States District Judge

---

[1] Plaintiff cites to *Putnam v. S.C. Farm Bureau Mut. Ins. Co.*, 476 S.E.2d 902 (S.C. 1996) for the proposition that he could "contract for insurance coverage which is greater than that required by statute" including UIM coverage where none of the insured's vehicles are involved in the accident. While Plaintiff is correct that he could have contracted for more coverage, there is no allegation that he did. *See Booth v. Allstate Ins. Co.*, 334 F. Supp. 2d 880 (D.S.C. 2004) ("Plaintiff has failed to demonstrate, as required by *Putnam,* that he and the Defendant specifically contracted for stacking UIM coverage over and above the minimum limits established by § 38-77-160.").